## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| VIETNAM VETERANS OF AMERICA and NATIONAL VETERANS COUNCIL FOR LEGAL REDRESS, | ) ) ) | Civil Action No. _____ |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| U.S. DEPARTMENT OF DEFENSE, DEPARTMENT OF THE ARMY, DEPARTMENT OF THE NAVY, and DEPARTMENT OF THE AIR FORCE, | ) ) ) ) | May 4, 2015 |
| | ) | |
| *Defendants*. | ) | |
| | ) | |
| _____ | ) | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. §
552, for declaratory and injunctive relief to compel the United States Department of Defense
("DOD"), the Department of the Army ("Army"), the Department of the Navy ("Navy"), and the
Department of the Air Force ("Air Force") (collectively, "Defendants") to comply with FOIA by
disclosing improperly withheld records regarding the discharge upgrade applications of veterans
with post-traumatic stress disorder (PTSD).

2.      Before PTSD was recognized as a medical condition in 1980, the United States
military discharged tens of thousands of servicemembers suffering from undiagnosed PTSD with
other-than-honorable (OTH) or other forms of "bad paper" discharges.

3.      For decades, the U.S. Department of Veterans Affairs ("VA") has denied
disability compensation and other benefits to veterans with a bad discharge, including an OTH.

4.      Congress has established administrative boards within DOD to consider applications by veterans seeking to revise a discharge status that is improper or unjust. These bodies include the Boards for Correction of Military/Naval Records (collectively, "BCMRs").

5.      However, BCMRs have collectively failed to prioritize or take seriously discharge upgrade requests from veterans diagnosed with PTSD stemming from military service. BCMRs have not published clear standards or requirements for these discharge upgrades, and have denied applications from veterans with PTSD on a near-categorical basis.  For instance, between 1993 and 2014, BCMRs approved fewer than five percent of these applications from Vietnam veterans, even though Vietnam veterans by definition could not have been diagnosed with PTSD when discharged, since PTSD was not a recognized medical condition until 1980.

6.      Reacting to the lack of efficient and fair adjudication by BCMRs, Secretary of Defense Chuck Hagel issued a memorandum entitled "Supplemental Guidance to Military Boards for Correction of Military/Naval Records Considering Discharge Upgrade Requests by Veterans Claiming Post Traumatic Stress Disorder" (hereafter "PTSD Upgrade Memo") in September 2014, instructing BCMRs to give "liberal consideration" to applications from veterans with PTSD.

7.      Plaintiffs requested records regarding BCMR adjudication of PTSD-related applications. Disclosure of these records is essential for the public to assess DOD's compliance with the directive and assist veterans seeking to apply for discharge upgrades.

8.      In violation of FOIA, Defendants failed to provide responsive, non-exempt records within the statutory time period.

## JURISDICTION AND VENUE

9.     This court has jurisdiction over this matter pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1331 and 1361.

10.     Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).  Plaintiff Vietnam Veterans of America ("VVA") has five chapters incorporated in Connecticut and has members in Connecticut. Plaintiff National Veterans Council for Legal Redress ("NVCLR") is incorporated in Connecticut and has its principal place of business in New Haven, CT.

## PARTIES

11.     Plaintiff VVA is one of two Parties that filed the unfulfilled FOIA requests at issue. Founded in 1978, VVA is the only veterans' organization congressionally chartered and dedicated to the needs of Vietnam veterans across all military departments. VVA is also one of the few congressionally chartered veterans service organizations that allows veterans with other-than-honorable discharge statuses to join as members. VVA has five chapters and many members in Connecticut.  Its headquarters are in Maryland.

12.     Plaintiff NVCLR is one of two Parties that filed the unfulfilled FOIA requests at issue. NVCLR is a Connecticut membership-based organization that seeks to assist veterans with less-than-honorable discharges and to educate the public about the plight of these veterans. Like VVA, NVCLR allows veterans with other-than-honorable discharges to join as members. NVCLR has its headquarters in Connecticut.

13.     Defendant United States Department of Defense ("DOD") has failed to comply with the FOIA requests. DOD oversees all BCMRs, which collectively evaluate discharge upgrade petitions. DOD is an agency within the meaning of 5 U.S.C. § 552(f)(1).

14.     Defendant Department of the Army ("Army"), a component of DOD, has failed to comply with the FOIA requests. The Army Board for Correction of Military Records ("ABCMR") adjudicates discharge upgrade petitions from Army veterans.

15.     Defendant Department of the Navy ("Navy"), a component entity of DOD, has failed to comply with the FOIA requests. The Navy is the military department responsible for administration of the United States Marine Corps. The Board for Correction of Naval Records ("BCNR") adjudicates discharge upgrade petitions from Navy and Marine Corps veterans.

16.     Defendant Department of the Air Force ("Air Force"), a component entity of DOD, has failed to comply with the FOIA requests. The Air Force Board for Correction of Military Records ("AFBCMR") adjudicates discharge upgrade petitions from Air Force veterans.

## FACTS

### BCMRs Denied Discharge Upgrade Applications from Veterans with PTSD on a Nearly Categorical Basis Prior to the PTSD Upgrade Memo

19.     Veterans with an OTH or other bad paper discharge may apply to an administrative board of their military department to seek a discharge upgrade. Each military department has its own policies and procedures for evaluating these applications.

20.     Without access to treatment and compensation for their war wounds, and further burdened by the stigma associated with their discharge statuses, many veterans with an OTH have struggled to transition to civilian life. Their undiagnosed PTSD symptoms exacerbate situations of financial hardship, emotional instability, and difficult social reintegration.

21.     As a result, many veterans who later receive diagnoses of PTSD stemming from their military service have submitted discharge upgrade applications to administrative boards to correct the error or injustice of their discharge, in part to receive the disability benefits and other VA benefits their service has earned.

22.     Each military department has two administrative boards with authority to review discharge upgrade applications, the Discharge Review Boards ("DRBs") and BCMRs.

23.     DRBs have limited jurisdiction to upgrade discharges. Veterans must apply to DRBs within fifteen years of their discharge, and this deadline is not waivable. *See* 32 C.F.R. § 70.9; 10 U.S.C. § 1553.

24.     BCMRs have broader jurisdiction and the authority to correct any "error or injustice" in a servicemember's military records. 10 U.S.C. § 1552(a)(1). The BCMRs have a three-year statute of limitations but may waive this deadline "in the interest of justice." *Id.* at § 1552(b). BCMRs may review DRB decisions, but have not clearly codified or published their standards of review.

25.     BCMRs have failed seriously to consider discharge upgrade requests from veterans suffering from PTSD. With respect to Vietnam veterans, BCMRs have frequently denied applications on the ground that a veteran did not have a PTSD diagnosis in his record, even though PTSD was not a recognized medical diagnosis at the time of the veteran's discharge.

26.     From 1993 to 2014, BCMRs granted fewer than five percent of PTSD-related discharge upgrade applications by Vietnam veterans with OTH discharges.

27.     In contrast, nearly a third (30.58%) of all veterans who applied to the ABCMR (in 2009, 2010, and 2012) for any reason, or who applied to the Army Discharge Review Board (ADRB) (in 2009, 2010, and 2012) or Navy Discharge Review Board (NDRB) (in 2007-2013) for discharge upgrades had their records corrected, according to the National Veterans Legal Services Program.

28.     The difference in grant rates between all veteran applications and veterans from the Vietnam Era with PTSD-specific applications is statistically significant at $p < .001$.

29.     Comparing only discharge upgrade requests from the ADRB and NDRB to discharge upgrade requests from the Vietnam Era PTSD-specific applications, veterans overall are still much more likely to receive a discharge upgrade than are Vietnam veterans with PTSD seeking discharge upgrades. This difference is statistically significant at $p < .001$.

30.     One likely reason for the wide variation in these grant rates is that BCMRs have routinely failed to give veterans the opportunity to appear before them and present their case in person. For instance, the BCNR has not held an in-person hearing in decades, despite the statutory authority to do so. *See* 10 U.S.C. § 1552(a)(3).

31.     Frustrated with the military's failure to give proper consideration to PTSD-related discharge upgrade applications, veterans and advocacy organizations, including VVA and NVCLR, have urged DRBs and BCMRs to apply more transparent, consistent, and medically appropriate standards for considering these applications.

32.     In March 2014, Plaintiffs in this action joined with five individual veterans to file a proposed, nation-wide class action lawsuit, *Monk v. Mabus*, No. 3:14-cv-00260 (D. Conn. Mar. 3, 2014) challenging how the three service branches evaluated discharge upgrade applications submitted by Vietnam veterans who received an OTH and were subsequently diagnosed with combat-related PTSD.

33.     Reacting to this litigation, media scrutiny, and the demand for more just adjudication of discharge upgrade applications by Senator Richard Blumenthal (D-CT) and others, then-Secretary of Defense Chuck Hagel issued the PTSD Upgrade Memo to improve BCMR adjudication of PTSD-related applications.

### DOD Has Failed to Release Records About Previous Discharge Upgrade Review Practices and Current Implementation of the PTSD Upgrade Memo

34.     Without information about how DOD, Army, Navy, Air Force, and their respective boards have handled PTSD-related discharge upgrade applications, the public cannot hold these entities accountable for the fair and just treatment of veterans. Veterans eligible for the "liberal consideration" mandated by the PTSD Upgrade Memo do not know how best to prepare and submit their applications, nor can veterans services organizations and legal service providers meaningfully assist these elderly, disabled, and often indigent veterans.

35.     The substantial lack of transparency and consistency in DRB and BCMR evaluation of PTSD-related discharge upgrade applications has obstructed meaningful public oversight of how BCMRs operate. These boards are the only congressionally authorized entities charged with the duty to correct errors and injustices in veterans' service records.

36.     To promote public accountability for BCMRs, and to better inform veterans and their service providers how to secure the benefits intended by the PTSD Upgrade Memo, Plaintiffs' FOIA requests sought information regarding BCMR adjudications of PTSD-related applications before and after issuance of the PTSD Upgrade Memo. A copy of Plaintiffs' FOIA requests is attached to this complaint as Exhibit A.

37.     Plaintiffs originally requested annual data between 1980 and 2014 on the number of applications or requests for reconsideration (RFRs) and number of personal appearance hearings each BCMR received and granted, as well as decisions on any discharge upgrade application that mentioned PTSD. *See* items 5-12 in Exhibit A.

38.     Plaintiffs further requested records on each military department's implementation of the PTSD Upgrade Memo for pending and future requests, including copies of the report on compliance mandated in the PTSD Upgrade Memo. *See* items 1-4 and 7 in Exhibit A.

39.     Many affected veterans are elderly, indigent, and suffer from medical problems. Their needs are substantial and urgent. Effective and immediate implementation of the PTSD Upgrade Memo is of clear importance to these veterans and the public they served to protect.

40.     Only with historical data that contextualizes current policies and guidance for BCMRs can the public evaluate whether the PTSD Upgrade Memo is merely a symbolic gesture or whether it has effected genuine change that will benefit the estimated 80,000 Vietnam veterans with OTHs suffering from PTSD. *See* Dan Lamothe, *Long road still ahead for Vietnam veterans seeking PTSD-related discharge upgrades*, WASH. POST, Sept. 4, 2014, http://www.washingtonpost.com/news/checkpoint/wp/2014/09/04/long-road-still-ahead-for-vietnam-veterans-seeking-ptsd-related-discharge-upgrades.

41.     The basic disclosures called for in the Plaintiffs' FOIA requests are necessary and overdue.

## VVA AND NVCLR'S FOIA REQUESTS

42.     By letter dated December 8, 2014, Plaintiffs submitted substantially similar FOIA requests to Defendants for records relating to the context and implementation of the PTSD Upgrade Memo. *See* Exhibit A.

43.     Items 1, 2, 3, and 4 of each request sought guidance, reports, and statistics on the implementation of the PTSD Upgrade Memo. Item 7 sought reports prepared for submission to Congress as required by 10 U.S.C. § 1557(e).

44.     Items 5 and 6 sought statistics on requests for personal hearings before the correction boards. Items 8, 9, 10, 11, and 12 sought statistics on and copies of certain decisions from the correction boards.

45.     All letters requested a fee limitation and fee waiver.

46.     By letter dated December 29, 2014, DOD confirmed receipt and stated that it was unable to respond within FOIA's twenty (20) day statutory time period. DOD referred parts of the request, including records requested in items 5, 6, 8, 9, 10, 11, and 12, to the Army, the Navy, and the Air Force. A copy of this letter is attached as Exhibit B.

47.     DOD has failed to communicate with the Plaintiffs since December 29, 2014.

48.     To date, DOD has not provided records requested by Plaintiffs, notwithstanding FOIA's requirement of an agency response within twenty working days.

49.     By letter dated December 17, 2014, the Air Force confirmed receipt and stated that its response would be provided within twenty (20) business days. A copy of this letter is attached as Exhibit C.

50.     By letter dated February 18, 2015, the Air Force informed Plaintiffs that the FOIA request was "put on hold, pending notification from you of your willingness to narrow the scope of your request." The Air Force provided a responsive record pursuant to item 1.

51.     The Air Force also deferred a determination of Plaintiffs' request for a fee limitation and fee waiver. The agency stated that it would continue to process items 1, 2, and 3 of the request up to the authorized $100 fee limit.

52.     The Air Force stated it would not process items 4, 5, 6, 7, 8, 9, 10, and 12 unless Plaintiffs narrowed the scope of their request and declined to process item 11. A copy of this letter is attached as Exhibit D.

53.     By email dated March 26, 2015, Plaintiffs agreed to narrow their December 8, 2014 request. In particular, Plaintiffs modified items 5, 6, 8, and 11 and withdrew items 9, 10, and 12. A copy of this letter is attached as Exhibit E.

54. By letter dated February 13, 2015, the Navy deferred a determination of Plaintiffs' request for a fee limitation and fee waiver "pending a response to our request for clarification and reduction in the scope of your request." With its letter, the Navy enclosed responses to items 1, 8, and 9 up to the authorized $100 fee limit.

55. Navy requested that Plaintiffs reduce the scope of items 1, 2, 3, and 4. The Navy declined to further process items 11 and 12 as "unduly burdensome." The Navy stated it had no responsive records related to items 5, 6, 7, and 10. A copy of this letter is attached as Exhibit F.

56. By letter dated March 10, 2015, the Department of the Navy ("DON") Privacy Act/Freedom of Information Act office informed Plaintiffs that the office was closing their file because the BCNR had received and responded to a copy of the same request. A copy of this letter is attached as Exhibit G.

57. By email dated March 26, 2015, Plaintiffs agreed to narrow their December 8, 2014 request to the Navy. Plaintiffs modified items 5, 6, and 11 and withdrew items 9, 10, and 12. A copy of this letter is attached as Exhibit H.

58. By letter dated February 11, 2015, the Army confirmed receipt of the request and the duplicate referral from DOD. A copy of this letter is attached as Exhibit I.

59. By letter dated March 17, 2015, the Army appeared to deny Plaintiffs' fee waiver request as an interim matter, with a final determination pending a response to the agency's request that Plaintiffs narrow the scope of their submission.

60. The Army stated that it would not process items 4, 5, 6, 8, 9, 10, 11 or 12 because, if not narrowed, in the Army's view these items were unduly burdensome. The Army produced records pursuant to items 1, 2, and 3. A copy of this letter is attached as Exhibit J.

61.     By email dated April 9, 2015, Plaintiffs agreed to narrow their December 8, 2014 Army request. Plaintiffs modified their requests for items 4, 5, 6, 8, and 11 and withdrew items 9, 10, and 12. A copy of this letter is attached as Exhibit K.

62.     By letter dated April 28, 2015, Plaintiffs notified the Army that they would not contest redactions pursuant to 5 U.S.C. § 552(b)(6) in Exhibit J. Plaintiffs further notified the Army that they did not interpret the agency's interim fee waiver response to be a final determination; however, in the event that the Army formally denied Plaintiffs' request, Plaintiffs thereby appealed. A copy of this letter is attached as Exhibit L.

63.     Defendants have not issued a final decision on Plaintiffs' requests for records or their requests for fee waivers within the statutory deadline.  *See* 5 U.S.C. § 552(a)(6)(A)(i). Therefore, Plaintiffs have exhausted their administrative remedies.

64.     Defendants have wrongfully withheld requested records from Plaintiffs.

## FIRST CLAIM FOR RELIEF:
### Defendants Failed to Timely Release Records Responsive to Plaintiffs' Request

65.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 64 as if repeated and reincorporated herein.

66.     The failure of DOD, the Army, the Navy, and the Air Force to release records responsive to the items outlined in Plaintiffs' requests, as narrowed, violates Plaintiffs' right to those records under 5 U.S.C. § 552(a)(3)(A).

## SECOND CLAIM FOR RELIEF:
### Defendants Wrongfully Withheld Agency Records

67.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 66 as if repeated and reincorporated herein.

68.     The failure of DOD, the Army, the Navy, and the Air Force to provide Plaintiffs with complete and full records responsive to each item of Plaintiffs' requests, as narrowed, violates Plaintiffs' rights under 5 U.S.C. § 552(a)(3)(A).

### THIRD CLAIM FOR RELIEF:
**Defendants Failed to Make a Reasonable Effort to Search for Responsive Records**

69.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 68 as if repeated and reincorporated herein.

70.     The failure of DOD, the Army, the Navy, and the Air Force to make a reasonable effort to search for responsive records violates Plaintiffs' rights under 5 U.S.C. § 552(a)(3).

### FOURTH CLAIM FOR RELIEF:
**Defendants Failed to Grant a Fee Waiver and Fee Limitation**

71.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 70 as if repeated and reincorporated herein.

72.     The failure of DOD, the Army, the Navy, and the Air Force to grant Plaintiffs a public interest fee waiver violates Plaintiffs' rights under 5 U.S.C. § 552(a)(4)(A)(iii).

73.     Defendants' failure to grant a fee limitation violates Plaintiffs' rights pursuant to 552(a)(4)(A)(ii)(II).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

1) Assume jurisdiction over this matter;

2) Order Defendants to disclose and release the requested records in their entireties and to make copies available to Plaintiffs, including in electronic format if they exist in electronic form, as provided by 5 U.S.C. §552(a)(3)(B);

3)  Provide for expeditious proceedings in this action, *see* 28 U.S.C. § 1657(a);

4)  Order Defendants to grant a fee limitation to Plaintiffs as representatives of the news

    media for search, duplication, and review fees, as provided by 5 U.S.C. §

    552(a)(4)(A)(ii)(II), and a public interest fee waiver, *id.* § 552(a)(4)(A)(iii);

5)  Award Plaintiffs costs and reasonable attorney's fees in this action, *id.* § 552(a)(4)(E);

    and

6)  Grant any other relief the Court deems appropriate.


Dated:  May 4, 2015
        New Haven, CT

Respectfully submitted,


By:  /s/ Michael J. Wishnie
Elizabeth Dervan, Law Student Intern
Kathryn Jones, Law Student Intern
Virginia McCalmont, Law Student Intern
Rebecca Ojserkis, Law Student Intern
Julia Shu, Law Student Intern
Jonathan Manes, Supervising Attorney (ct29574)
Michael Wishnie, Supervising Attorney (ct27221)
Jerome N. Frank Legal Services Organization
Veterans Legal Services Clinic
P.O. Box 209090
New Haven, CT 06520-9090
(203) 432-4800